## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**JAMES MURPHY**
**ADC #134181**                                                        **PLAINTIFF**

**V.**                        **CASE NO.: 1:07CV00052 SWW/BD**

**CORRECTIONAL MEDICAL SERVICES, et al.**                **DEFENDANTS**


## RECOMMENDED DISPOSITION

**I.**     **Procedure for Filing Objections:**

The following recommended disposition has been sent to United States District

Court Judge Susan Webber Wright.  Any party may serve and file written objections to

this recommendation.  Objections should be specific and should include the factual or

legal basis for the objection.  If the objection is to a factual finding, specifically identify

that finding and the evidence that supports your objection.  An original and one copy of

your objections must be received in the office of the United States District Court Clerk no

later than fourteen (14) days from the date of the Recommended Disposition.  A copy will

be furnished to the opposing party.  Failure to file timely objections may result in waiver

of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

1

II.    **Procedural Background:**

Plaintiff, an Arkansas Department of Correction ("ADC") inmate, filed a pro se[1] complaint (Docket entry #2) under 42 U.S.C. § 1983 on November 8, 2007, and filed an amended complaint (#43) on March 31, 2008.  Defendants Correctional Medical Services, Inc. (CMS), Dr. Roland Anderson, George Wilson, Tom Bradshaw, Jody LeFevers, Kevin Sanders, Dr. Horace Marvin, Jr., Linda Hunt, and Carla Selvey have filed a motion for summary judgment (#81).  In their motion, Defendants contend: (1) Plaintiff failed to exhaust his administrative remedies with respect to all of his deliberate indifference claims except for a claim regarding his left shoulder; (2) Plaintiff failed to exhaust his shoulder claim as to all defendants except Defendant Anderson; and (3) Defendant Anderson was not deliberately indifferent to Plaintiff's serious medical needs.  Plaintiff has not responded to the motion.

This Court recommends that the District Court GRANT Defendants' motion for summary judgment.

---

[1] The Court has entered three orders appointing counsel (#60, #63, #71) and has granted one motion to substitute counsel (#74).  The first attorney the Court appointed moved to withdraw (#62) on grounds that she had already fulfilled her pro bono requirement.  The Court granted the motion.  (#63) The other appointed attorneys, after reviewing the pleadings and discovery, moved to withdraw on grounds that the case has no merit.  (#68, #77)  The Court granted their motions.  (#69, #79)  Accordingly, the Plaintiff is now proceeding pro se.

### III.    __Factual Background__:

In his complaint, Plaintiff alleges that in July, 2006, he sustained an injury to his

left shoulder while working in the food service department at the North Central Unit of

the ADC.  Plaintiff put in a "sick call" request to the infirmary on February 19, 2007.

(#83-2 at p. 3)  In the request, Plaintiff stated, "I hurt my left shoulder in the end of July

and I was working last week and I pulled something and now it is worse, and I need to

have it rechecked because I can barely use my left arm."  (#83-2 at p. 3)  On February 22,

2007, the infirmary nurses referred Plaintiff to Dr. Jody Lefevers.  (#83-2 at p. 4)

On February 26, 2007, Dr. Lefevers examined Plaintiff.  (#83-2 at p. 6)  At that

time, Dr. Lefevers ordered an x-ray of Plaintiff's left shoulder and gave him a "script" for

no duty, yard call, or sports for three days.  (#83-2 at p. 7)  Two days later, x-rays were

taken of Plaintiff's left shoulder.  (#83-2 at p. 8)  The results revealed no evidence of

recent facture or dislocation.  (#83-2 at p. 8)  A note dated February 28, 2007, indicates a

diagnosis of "left shoulder strain" and recommends follow-up care with Dr. Horace

Marvin.  (#83-2 at p. 9)  On March 8, 2007, Dr. Marvin reviewed the x-ray results with

Plaintiff.  (#83-2 at p. 10)  Dr. Marvin suggested exercises, moist heat to the shoulder,

and restricted movement.  (#83-2 at p. 10)

On March 15, 2007, Plaintiff requested another "sick call."  (#83-2 at p. 11)  On

March 27, 2007, Dr. Lefevers examined Plaintiff and noted "no bruising or swelling."

(#83-2 at p. 12)  Dr. Lefevers provided Plaintiff a sling for his left shoulder and arm and

prescribed analgesic balm and Robaxin.  (#83-2 at p. 12)  Dr. Lefevers again referred Plaintiff to Dr. Marvin.  (#83-2 at p. 12)

On April 4, 2007, Dr. Marvin examined Plaintiff who was complaining of increased pain.  (#83-2 at p. 14)  Dr. Marvin requested a CT scan for Plaintiff.  (#83-2 at p. 14)

On April 17, 2007, Plaintiff submitted another sick call request about his shoulder.  (#83-2 at 16)  He was seen on April 20th.  (#83-2 at 17)  Plaintiff was told he would be scheduled for follow-up with the physician after his diagnostic studies were complete.  (#83-2 at p. 17)  Plaintiff was given an arm sling.  (#83-2 at p. 18)

On May 15, 2007, Plaintiff had a CT scan of his left shoulder.  (#83-2 at p. 19)  The report from the CT scan revealed no evidence of "fracture or dislocation or subluxation."  (#83-2 at p. 19)  His left shoulder was reported to be "normal."  (#83-2 at p. 19)  Dr. Marvin saw Plaintiff again on May 31, 2007, and informed him that the CT scan revealed nothing was wrong with his left shoulder and arm.  (#83-2 at p. 21)  However, Dr. Marvin requested a consultation with an orthopedic specialist for Plaintiff.  (#83-2 at p. 22)

On July 25, 2007, Dr. Crowell, an orthopedic specialist, examined Plaintiff.  (#83-2 at p. 23)  Dr. Crowell recommended that Plaintiff have an arthrogram and a CT scan.  (#83-2 at p. 23)  Dr. Marvin submitted a request for the arthrogram and CT scan the following day.  The Plaintiff had the arthrogram and CT scan on August 30, 2007.  (#83-2

at pp. 25-26)  The report from the tests indicated "no radiographic abnormalities." (#83-2 at p. 25)

On March 31, 2008, Plaintiff filed an amended complaint (#4) claiming that in December, 2007, and March, 2008, Defendants delayed treating his diabetes and improperly responded to his requests for diabetic footwear.

On June 10, 2010, Dr. John Irvin examined Plaintiff and reviewed his medical records to evaluate his care.  (#83-2 at p.2)  Plaintiff told Dr. Irvin that he was "ordered to stop complaining" about his shoulder.  (#83-2 at p.2)  Dr. Irvin concluded Plaintiff had diabetes with "poor compliance with therapy," hypothryroidism but Plaintiff "reports he will not take meds anymore," and "mild crepitus" in his left shoulder. (#83-2 at p. 2)

## IV.   <u>Discussion</u>:

### A.   *Standard*

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact.  FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).  Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P . 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) (internal citation

omitted) ("The nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.")

If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted.  See *Celotex*, 477 U.S. at 322.  "Though pro se complaints are to be construed liberally, see *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285(1976), they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

**B.    *Exhaustion***

The PLRA requires that prisoners exhaust all "available" remedies before filing suit under 42 U.S.C. § 1983.  See 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001) (holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained").  If exhaustion is not complete by the time of the filing of the prisoner's complaint, dismissal is mandatory. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).  Prisoners have been excused from completing administrative procedures only where correctional officials have prevented prisoners from using administrative procedures or where the officials themselves have failed to comply with the administrative procedures.  *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001); *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001).

The affidavit of Charlotte Gardner, a Medical Grievance Investigator for the ADC, indicates Plaintiff did not exhaust any grievances related to his diabetes or his request for diabetes footwear before he filed his amended complaint.  (#83-3 at p. 1)  Plaintiff has not presented any evidence to counter Ms. Gardner's affidavit.  Accordingly, Defendants are entitled to summary judgment for failure to exhaust on all of Plaintiff's claims relating to his diabetes care and his requests for diabetic footwear.

According to Ms. Gardner's affidavit, Plaintiff filed three grievances related to medical care he received on his left shoulder but fully exhausted only one grievance (NC-07-00222) before filing his complaint.  (#83-3 at p. 1)  In his fully exhausted grievance, Plaintiff claimed that Dr. Anderson delayed "granting my CT," and that the delay was "a substantial inadequate medical response."  (#83-3 at p. 15)

Defendants seek summary judgment as to all Defendants except Defendant Anderson, whom Plaintiff specifically refers to in his only exhausted grievance.  (#83-3)  The Court finds that Plaintiff did not exhaust his remedies with respect to Defendants Correctional Medical Services, Inc. ("CMS"), George Wilson, Tom Bradshaw, Jody Lefevers, Kevin Sanders, Dr. Horace Marvin, Jr., Linda Hunt, and Carla Selvey before filing his complaint.  Accordingly, these Defendants are entitled to summary judgment.

## C.    *Deliberate Indifference*

"Whether a prison's medical staff deliberately disregarded the needs of an inmate is a factually-intensive inquiry."  *Meuir v. Greene County Jail Employees*, 487 F.3d 1115,

1118 (8th Cir. 2007).  "The plaintiff-inmate must clear a substantial evidentiary threshold

to show that the prison's medical staff deliberately disregarded the inmate's needs by

administering an inadequate treatment."  *Id*.  Negligent misdiagnosis does not create a

cognizable claim under § 1983.

> [A] complaint that a physician has been negligent in diagnosing or treating a medical
> condition does not state a valid claim of medical mistreatment under the Eighth
> Amendment. Medical malpractice does not become a constitutional violation merely
> because the victim is a prisoner. In order to state a cognizable claim, a prisoner must
> allege acts or omissions sufficiently harmful to evidence deliberate indifference to
> serious medical needs.

*Estelle*, 429 U.S. at 106, 97 S.Ct. 285.  See also *Popoalii v.. Corr. Med. Servs.*, 512 F.3d

488, 499 (8th Cir. 2008) ("Medical malpractice alone ... is not actionable under the Eighth

Amendment.").  "Deliberate indifference entails a level of culpability equal to the criminal

law definition of recklessness, that is, a prison official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference."  *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004)

(internal quotation omitted).

    Here, Plaintiff fails to allege any conduct that constitutes deliberate indifference to

his medical needs.  In his exhausted grievance, Plaintiff claims a delay in treatment.

Specifically, he claims that Defendant Anderson delayed approving a referral for a CT scan

and a consultation with an orthopedic specialist.  The medical records do not indicate an

unacceptable delay on the part of Defendant Anderson or anyone else involved with

Plaintiff's medical care.

On April 4, 2007, Dr. Marvin examined Plaintiff and on the same day requested a CT scan of Plaintiff's left shoulder.  On April 17, 2007, Plaintiff submitted another sick call request about his shoulder and was seen on April 20th.  Plaintiff was told he would be scheduled for follow-up with the physician after his diagnostic studies were complete.  On May 15, 2007, Plaintiff had a CT scan of his left shoulder.  His left shoulder was reported to be "normal."  Dr. Marvin saw Plaintiff again on May 31, 2007, and informed him that the CT scan revealed nothing amiss with his left shoulder and arm.  Nevertheless, on that same day he requested a consultation for Plaintiff with an orthopedic specialist.  On July 25, 2007, Dr. Crowell, an orthopedic specialist, examined Plaintiff and recommended that Plaintiff undergo an arthrogram and a CT scan.  Plaintiff had the arthrogram and CT scan on August 30, 2007, and the report from the tests indicated no abnormalities.

Throughout the course of his treatment, Plaintiff received an x-ray, CT scans, an orthopedic examination, and an arthrogram.  The results of all of the tests were normal.  Dr. Irvin examined Plaintiff on June 10, 2010, reviewed his medical records, and concluded that the care and treatment Plaintiff received was sufficient.  (#83-2 at p.2)  Although the extensive visits to physicians and tests may not have provided Plaintiff with the answers for which he was searching, he can hardly claim that Defendant Anderson or anyone else involved with the treatment of his shoulder disregarded his serious medical needs.  See *Estelle v. Gamble*, 429 U.S. 97, 107, 97 S.Ct. 285 (1976) (where medical personnel saw inmate 17 times in three months and treated back strain with bed rest, muscle relaxants, and

pain relievers, their failure to x-ray his broken back or implement other diagnostic techniques or treatment was not deliberate indifference); *Sherrer v. Stephens*, 50 F.3d 496 (8th Cir. 1994) (holding that treatment of inmate's broken finger did not rise to the level of deliberate indifference based on evidence that he received x-rays, painkillers, instructions to apply ice, and was examined by orthopedists); and *Bellecourt v. United States*, 994 F.2d 427, 431 (8th Cir. 1993) (holding that, although physician misdiagnosed inmate's condition and the method of physical examination and treatment may not have followed community standards, conduct did not amount to deliberate indifference).

The Court finds that adequate treatment was continually provided to Plaintiff, and his claim of deliberate indifference to his serious medical needs fails, as a matter of law.

V.     **Conclusion:**

The Court recommends that the District Court GRANT Defendants' motion for summary judgment (#81), and DISMISS Plaintiff's complaint and amended complaint with prejudice.

DATED this 4th day of August, 2010.

_____
UNITED STATES MAGISTRATE JUDGE